No. 23-1228

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | | |
|---|---|---|
| COURTNEY EALY, | ) | Appeal from the United States |
| | ) | District Court for the Central |
| Plaintiff-Appellant | ) | District of Illinois |
| | ) | |
| v. | ) | No. 3:20-cv-03027 |
| | ) | |
| CAMERON WATSON, DAVID D. | ) | |
| FRANK, and ANGELA McKITTRICK, | ) | The Honorable |
| | ) | JAMES E. SHADID, |
| Defendants-Appellees. | ) | Judge Presiding. |

**BRIEF OF DEFENDANTS-APPELLEES**

**KWAME RAOUL**
Attorney General
State of Illinois

**JANE ELINOR NOTZ**
Solicitor General

115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-3000

Attorneys for Defendants-Appellees

**MEGAN L. BROWN**
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(224) 204-9642 (office)
(312) 415-6318 (cell)
Megan.Brown@ilag.gov

# TABLE OF CONTENTS

Page(s)

JURISDICTIONAL STATEMENT ................................................................... 1

ISSUES PRESENTED FOR REVIEW .......................................................... 3

STATEMENT OF THE CASE ......................................................................... 4

Factual Background ....................................................................................... 4

Procedural Background ................................................................................. 7

SUMMARY OF ARGUMENT ..................................................................... 13

ARGUMENT ................................................................................................. 14

I.    This court reviews *de novo* the district court's entry of summary judgement for defendants. ................................................................................... 14

II.   The district court correctly entered summary judgement for defendants on Ealy's due process claim. ........................................... 14

      A.    The punishment that defendants recommended and approved did not deprive Ealy of a protected liberty interest. ................................ 15

      B.    Alternatively, Ealy received all the process he was due. ......................... 23

III.  The district court did not abuse its discretion by denying Ealy's requests to recruit counsel and, regardless, Ealy was not prejudiced by the absence of counsel. ..................................................................... 29

      A.    The district court applied the correct legal standard and reasonably denied Ealy's requests for recruited counsel based on the available facts. ..................................................... 30

      B.    Ealy has not demonstrated that he was prejudiced by the district court's denial of his requests for counsel. ................................... 38

CONCLUSION .............................................................................................. 40

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Cases**

Page(s)

*Adams v. Reagle,*
        91 F.4th 880 (7th Cir. 2024) ...................................................................*passim*

*Balle v. Kennedy,*
        73 F.4th 545 (7th Cir. 2023) ............................................................................... 37

*Brown v. Randle,*
        847 F.3d 861 (7th Cir. 2017) ............................................................................... 22

*Budd v. Motley,*
        711 F.3d 840 (7th Cir. 2013) ............................................................................... 22

*Chavis v. Rowe,*
        643 F.2d 1281 (7th Cir. 1981) ............................................................................ 28

*Daniels v. Williams,*
        474 U.S. 327 (1986) ............................................................................... 19,20,21

*Daugherty v. Page,*
        906 F.3d 606 (7th Cir. 2012) ............................................................................... 14

*Del Raine v. Williford,*
        32 F.3d 1024 (7th Cir. 1994) ............................................................................... 20

*De Spain v. Uphoff,*
        264 F.3d 965 (10th Cir. 2001) ............................................................................ 22

*Dixon v. Godinez,*
        114 F.3d 640 (7th Cir. 1997) ............................................................................... 22

*Dorsey v. Varga,*
        55 F.4th 1094 (7th Cir. 2022) ............................................................................. 33

*Gillis v. Litscher,*
        468 F.3d 488 (7th Cir. 2006) ....................................................................... 18,21,22

*Hakim v. Accenture U.S. Pension Plan,*
        718 F.3d 675 (7th Cir. 2013) ............................................................................... 14

*Hardaway v. Meyerhoff*,
    734 F.3d 740 (7th Cir. 2013) ...................................................................... 15,18

*Harney v. City of Chi.*,
    702 F.3d 916 (7th Cir. 2012) ........................................................................ 14

*Hayes v. Walker*,
    555 F.2d 625 (7th Cir. 1977) ........................................................................ 28

*Hernandez v. Dart*,
    814 F.3d 836 (7th Cir. 2016) .......................................................................... 2

*Hess v. Garcia*,
    72 F.4th 753 (7th Cir. 2023) ........................................................................ 22

*Isby v. Brown*,
    856 F.3d 508 (7th Cir. 2017) ........................................................................ 15

*Johnson v. Prentice*,
    29 F.4th 895 (7th Cir. 2022) ........................................................................ 19

*Kervin v. Barnes*,
    787 F.3d 833 (7th Cir. 2015) ........................................................................ 17

*Lisle v. Welborn*,
    933 F.3d 705 (7th Cir. 2019) ...................................................................... 17,18

*Lucas v. Chi. Transit Auth.*,
    367 F.3d 714 (7th Cir. 2004) ........................................................................ 19

*Marion v. Columbia Corr. Inst.*,
    559 F.3d 693 (7th Cir. 2009) ........................................................................ 16

*Marion v. Radtke*,
    641 F.3d 874 (7th Cir. 2011) ........................................................................ 16

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ...................................................................................... 14

*McCaa v. Hamilton*,
    959 F.3d 842 (7th Cir. 2020) ........................................................................ 38

*Meachum v. Fano,*
    427 U.S. 215 (1976) ...................................................................... 15

*Mejia v. Pfister,*
    988 F.3d 415 (7th Cir. 2021) ...................................................... 30,3

*Morrisey v. Brewer,*
    408 U.S. 471 (1972) ...................................................................... 23

*Murphy v. Walker,*
    51 F.3d 714 (7th Cir. 1995) ...................................................... 18,22

*Olson v. Morgan,*
    750 F.3d 708 (7th Cir. 2014) ..................................................... 29,37

*Perez v. Fenoglio,*
    792 F.3d 768 (7th Cir. 2015) ...................................................... 1,35

*Piggie v. Cotton,*
    344 F.3d 674 (7th Cir. 2003) ......................................................... 25

*Pruitt v. Mote,*
    503 F.3d 647 (7th Cir. 2007) .................................................*passim*

*Redding v. Fairman,*
    717 F.2d 1105 (1983) ..................................................................... 27

*Ruehman v. Sheahan,*
    34 F.3d 525 (7th Cir. 1994) .......................................................... 20

*Sandin v. Conner,*
    515 U.S. 472 (1995) ...................................................................... 16

*Scheidler v. Indiana,*
    914 F.3d 535 (7th Cir. 2019) ........................................................ 37

*Scruggs v. Jordan,*
    485 F.3d 934 (7th Cir. 2007) ........................................................ 36

*Springer v. Durflinger,*
    518 F.3d 479 (7th Cir. 2008) ........................................................ 14

*Superintendent, Mass. Corr. Inst., Wapole v. Hill,*
    472 U.S. 445 (1985) ................................................................... 23

*Townsend v. Cooper,*
    759 F.3d 678 (7th Cir. 2014) ..................................................... 16

*Townsend v. Fuchs,*
    522 F.3d 765 (7th Cir. 2008) ..................................................... 16

*Wagner v. Hanks,*
    128 F.3d 1173 (7th Cir. 1997) ................................................... 16

*Watts v. Kidman,*
    42 F.4th 755 (7th Cir. 2022) ..................................................... 30

*Westefer v. Neal,*
    682 F.3d 679 (7th Cir. 2012) ..................................... 24,25,26,39

*Westefer v. Snyder,*
    422 F.3d 570 (7th Cir. 2005) ..................................................... 15

*Wheeler v. Walker,*
    303 F. App'x 365 (7th Cir. 2008) .............................................. 22

*Whitford v. Boglino,*
    63 F.3d 527 (7th Cir. 1995) ....................................................... 16

*Wilkinson v. Austin,*
    545 U.S. 209 (2005) ........................................................*passim*

*Wolff v. McDonnell,*
    418 U.S. 539 (1974) ................................................. 23,24,27,36

## Statutes and Regulations

42 U.S.C. § 1983 ........................................................................ 1

28 U.S.C. § 1291 ........................................................................ 2

28 U.S.C. § 1331 ........................................................................ 1

28 U.S.C. § 1915A ....................................................................... 1

28 U.S.C. § 1915(e)(1) ............................................................. 29

28 U.S.C. § 2107(a) ................................................................... 2

20 Ill. Admin. Code § 504.80(m) (2024)................................ 27

**Constitutional Provisions**

U.S. Const. amend. XIV, § 1 .................................................. 14

**Rules**

7th Cir. R. 28(b) ......................................................................... 1

Fed. R. App. P. 4(a)(1)(A)......................................................... 2

Fed. R. App. P. 4(c)(1)(A) ......................................................... 2

Fed. R. Civ. P. 56 ........................................................................ 1

Fed. R. Civ. P. 58 ........................................................................ 1

# JURISDICTIONAL STATEMENT

Plaintiff-Appellant Courtney Ealy's jurisdictional statement is not complete and correct. As required by 7th Cir. R. 28(b), Defendants-Appellees Cameron Watson, David D. Frank, and Angela McKittrick provide this statement.

Ealy, an inmate in the custody of the Illinois Department of Corrections ("Department"), filed a *pro se* complaint in the district court under 42 U.S.C. § 1983, claiming that several Department officials violated his constitutional rights. Doc. 1 at 1-2.[1] The district court screened the complaint under 28 U.S.C. § 1915A and determined that Ealy stated a due process claim under the Fourteenth Amendment to the United States Constitution against Watson, Frank, and McKittrick, and dismissed all other claims. Doc. 29 at 6. The district court had subject matter jurisdiction over Ealy's action under 28 U.S.C. § 1331 because it raised a federal question.

On January 30, 2023, the district court granted summary judgment under Fed. R. Civ. P. 56 to Watson, Frank, and McKittrick on Ealy's due process claim, Doc. 73, thereby disposing of all claims against all parties. On the same day, a separate judgment order was entered on the district court docket pursuant to Fed. R. Civ. P. 58. Doc. 74. To the extent that the district court's dismissal of the claims against the other defendants at screening should be construed as a dismissal without prejudice, *see Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015) (dismissals at screening are

---

[1] This brief cites the record on appeal, which is the district court's docket, as "Doc. __ at __," or "__ Text Order"; and Ealy's opening brief as "AT Br. __." The required short appendix to the opening brief is cited as "SA___."

1

generally without prejudice), the judgment is final for purposes of appellate jurisdiction because the district court indicated in the judgment that all claims had been resolved. *See* Doc. 74; *Hernandez v. Dart*, 814 F.3d 836, 841 (7th Cir. 2016) (dismissal without prejudice is final judgment when court demonstrated it was finished with the case). No motion to alter or amend the judgment was filed.

Ealy filed a notice of appeal on February 3, 2023. Doc. 75. Although the notice of appeal was dated February 1, 2023, *id.* at 3, the prison mailbox rule does not apply because the notice was not accompanied by a declaration or other evidence showing that it was deposited in the prison's internal mail system on that date, *see* Fed. R. App. P. 4(c)(1)(A). The notice of appeal was timely under 28 U.S.C. § 2107(a) and Fed. R. App. P. 4(a)(1)(A) because it was filed within 30 days of the judgment's entry on January 30, 2023. This court has jurisdiction over Ealy's timely appeal from a final judgment under 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

1.      Whether the district court correctly entered summary judgment for defendants on Ealy's due process claim because no reasonable jury could find that his five-month placement in disciplinary segregation deprived him of a constitutionally protected liberty interest.

2.      Whether the district court correctly entered summary judgment for defendants on Ealy's due process claim for the additional reason that the undisputed evidence showed that the challenged prison disciplinary hearing satisfied due process requirements where no sentencing credits were at stake.

3.      Whether the district court did not abuse its discretion in denying Ealy's motions to recruit counsel and, regardless, whether Ealy was not prejudiced by the absence of counsel.

# STATEMENT OF THE CASE

## Factual Background

On September 4, 2019, Ealy received a disciplinary report indicating that "multiple" inmates in Ealy's wing at Western Correctional Center ("Western") had "tested positive" for marijuana. Doc. 58-4 at 3. The report stated that, following the positive tests, prison officers conducted several interviews with inmates in Ealy's wing, including three confidential sources who divulged that Ealy was responsible for smuggling the marijuana into Western. *Id.* Specifically, the first source admitted that he had received marijuana from Ealy; the second source said that a female friend of Ealy's hid marijuana "inside her vagina," visited the prison, and gave the marijuana to Ealy in the visiting room; and the third source stated that he saw Ealy in possession of enough marijuana to make a couple of joints. *Id.* at 3-4.

The report also related that the officer who investigated the confidential sources' statements discovered that, on August 10, 2019, Ealy used another inmate's phone card to place a call to a female friend. *Id.* at 4. In the phone call, which prison staff recorded, Ealy asked his friend when she would visit the next day and told her, "Make sure you got that shit." *Id.* Ealy ended the phone call by telling his friend to "be smooth." *Id.*

Surveillance footage showed Ealy's friend, who visited the next day, reaching "into the crotch area of her sweatpants," retrieving an item, and placing the item on a napkin on the table in front of her. *Id.* There were candies on the napkin "used to hide the item." *Id.* Ealy then picked up the item, put it in his mouth, and then

swallowed the item without chewing.  *Id.*  Ealy was placed in administrative segregation on August 25, 2019, while staff at Western continued their investigation. Doc. 58 at 2; Doc 58-1.

The investigating officer concluded that Ealy had, in fact, brought marijuana into Western through the visiting room.  Doc. 58-4 at 3-4.  The disciplinary report, which was provided to Ealy, notified him that he had "the right to appear and present a written or oral statement or explanation" of the charges in the report.  *Id.* at 3.  The report also explained that Ealy could request staff assistance to prepare a defense and request a reasonable extension of time to prepare for his hearing.  *Id.* The report also included a form for requesting witnesses.  *Id.*  Ealy refused to sign the report, *see* Doc. 58-2 at 10; Doc. 58-4 at 3, and he did not submit the attached witness request form prior to his disciplinary hearing, Doc. 58-4 at 3.

Ealy filed a grievance regarding his disciplinary report the same day he received it.  Doc. 61 at 17.  In the grievance, Ealy questioned the trustworthiness of the confidential sources, claiming there was "no physical evidence" to corroborate their statements.  *Id.* at 17-18.  Ealy asked the grievance office to investigate and "throw out the ticket." *Id.* at 18.  Ealy did not ask for more time to prepare his defense, request witnesses to testify at his hearing, or ask to view the visiting room surveillance footage that showed him receiving marijuana.  *See id.* at 17-18.

Ealy's disciplinary hearing before the adjustment committee, which consisted of defendants Frank and McKittrick, was conducted eight days later, on September 12, 2019.  Doc. 58-4 at 1.  The adjustment committee's final summary report reflects

that Ealy pleaded guilty to using another inmate's pin number and abusing his phone privileges. *Id*. But Ealy pleaded not guilty to the drug possession charge and gave a statement to the committee, countering that if he had smuggled marijuana into Western, he would have used it himself and therefore tested positive for drug use. *Id*. Ealy also argued that the recorded phone call was about smuggling a debit card into Western, not drugs. *Id*. At the hearing, Ealy also requested a continuance to review the surveillance footage of his receipt of the marijuana in the visitors' room. Doc. 58 at 4.

The adjustment committee did not grant a continuance and found Ealy guilty of bringing marijuana into Western, based on the confidential sources' statements, the recorded phone call, and the visitors' room surveillance footage. Doc. 58-4 at 1-2. The committee recommended that Ealy be disciplined with: (1) six months of "C grade" status, (2) five months in disciplinary segregation, (3) a disciplinary transfer, and (4) six months of restricted contact visits. *Id*. at 2. Watson, Western's warden, signed off on the disciplinary action on September 16, 2019. *Id*.

Ealy spent the first month of his five-month segregation term, beginning in late August 2019, in investigatory segregation and was then moved to disciplinary segregation at Western in late September 2019. *See* Doc. 58 at 2. Ealy was later transferred to Lawrence Correctional Center ("Lawrence") on approximately October 23, 2019, Doc. 58 at 2; Doc. 58-1, and released into Lawrence's general population on January 26, 2020, Doc. 58-1.

**Procedural Background**

Ealy filed a complaint in district court alleging that several Department officials violated his constitutional rights. Doc. 1 at 9, 11, 13. At the same time, Ealy filed his first motion to recruit counsel. Doc. 3. In the motion, Ealy explained that he had attempted to contact one law firm and one attorney, and neither had responded. *Id.* at 1. Ealy stated that he had completed some high school and that he would not be able to represent himself because he took medication that reduced his focus. *Id.* at 2. Ealy also explained that this was his first civil case, so he was not familiar with the relevant law. *Id.*

On April 6, 2020, Ealy filed a motion for a preliminary injunction, Doc. 12 at 1, which was subsequently denied by the district court, 4/7/2020 Text Order. Ealy then filed an appeal from that order, Doc. 13, which was dismissed on June 30, 2020, Doc. 24. During the pendency of that appeal, the district court denied Ealy's motion to recruit counsel, but stated that it would reconsider the matter at a later time. Doc. 21 at 5-6.

After this court dismissed Ealy's appeal, the district court screened his complaint and determined that he had stated a procedural due process claim against Frank, McKittrick, and Watson. Doc. 29 at 5. The court dismissed the remainder of Ealy's claims. *Id.* Following screening, Ealy filed his second motion to recruit counsel, which was much the same as his first, except for his statement that he wanted a lawyer for the additional reason that he wished to subpoena "friendly witnesses in a deposition." Doc. 36 at 1. The district court denied Ealy's motion,

citing *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (*en banc*), and explaining that it needed to consider two questions: first, whether Ealy had made a reasonable attempt to obtain counsel, and second, whether, given the difficulty of the case, Ealy appeared competent to litigate his case himself. 12/02/2020 Text Order. The court acknowledged that Ealy had "made at least some attempt to find counsel." *Id.* But, the court continued, because Ealy had only one remaining claim, and that claim was not complex, Ealy appeared competent to litigate it given the adequacy of his prior filings. *Id.* The court added that, although Ealy wanted to depose witnesses, defendants had not yet filed an answer, and discovery had not yet begun. *Id.*

Soon after discovery began, Ealy filed a third motion to recruit counsel. Doc. 42. Ealy explained that he had "extremely limited access" to the prison's law library and that "covid-19 restrictions" blocked his attempts to obtain discovery. Doc. 42 at 1. For the first time, Ealy stated that the case would "involve medical issues" that might require expert testimony. *Id.* Ealy also explained that, because he was still incarcerated, he would be unable to find witnesses or investigate facts. *Id.* at 1-2.

The district court denied this motion as well, questioning whether Ealy would require an expert to provide testimony about medical issues when he had no medical claims. 1/27/2021 Text Order. The court, moreover, informed Ealy that, if he was having difficulty with discovery, he could always file a motion to continue with the court. *Id.*

Ealy filed a fourth motion to recruit counsel while discovery was underway, asserting that defense counsel had not disclosed the identity of the confidential

sources or his "relevant medical records." Doc. 44 at 1. He also stated that he did not have ready access to legal materials and that he had "trouble understanding how to complete production of documents." *Id.* The district court denied this motion, explaining that Ealy did not need any medical records because he did not raise any medical claims. 5/04/2021 Text Order. The court, however, told Ealy that he could seek copies of his drug test results and file a motion to compel if he sought the identities of the confidential sources. *Id.* Ealy did not file a motion to compel.

Defendants later filed a motion for summary judgment. Doc. 58. They first argued that Ealy did not have a protected liberty interest in avoiding his five-month segregation term because it did not pose an atypical and significant hardship. *Id.* at 6-8. Specifically, defendants argued that five months was "a relatively short period of time," and that Ealy had actually spent the first month of segregation in investigative segregation, rather than disciplinary segregation. *Id.* at 7. Therefore, "[t]he short duration of [Ealy's] disciplinary segregation foreclose[d] any due process liberty interest." *Id.* Defendants acknowledged Ealy's deposition testimony, in which he stated that his cells at Western were cold, one of his cells at Western was "filthy" with bad plumbing, and the window of his cell at Lawrence had a blocked metal cage obscuring his view. Doc. 58-2 at 21-22. But defendants argued that the cold Ealy experienced for at most two months at Western and the blocked window Ealy experienced for three months at Lawrence did not amount to an atypical and significant hardship that would entitle Ealy to procedural due process at a disciplinary hearing. Doc. 58 at 7-8.

Second, defendants argued that, even if Ealy could establish a protected liberty interest, the undisputed evidence showed that the disciplinary hearing comported with due process because he received: (1) eight days' notice before his hearing, (2) the opportunity to be heard before an impartial decisionmaker, (3) the opportunity to call witnesses, and (4) a written statement by the fact-finder of the evidence relied on and the reasons for the guilty finding. *Id.* at 8.

Ealy filed a response arguing that defendants had failed to sufficiently explain the basis for their disciplinary decision, allow him to call witnesses, or grant him a continuance in order to view the surveillance footage and consider the confidential sources' statements. Doc. 61 at 7-10. Additionally, Ealy claimed that his blocked window at Lawrence had caused eye damage, leading him to require prescription eyeglasses. *Id.* at 9-10. Ealy argued that the damage to his eyes indicated that he suffered an atypical and significant hardship. *Id.*

Defendants filed a reply in which they disputed whether Ealy's eye damage had been caused by his window in Lawrence's segregation cell. Doc. 63 at 2. Specifically, defendants stated that Ealy's theory regarding his eye damage was "based on speculation" because Ealy had "no medical evidence or expert opinion to prove causation." *Id.*

Two weeks after defendants filed their reply, Ealy filed his fifth and final motion to recruit counsel. Doc. 64. He noted that defendants expressed in their summary judgment reply that he had not marshalled enough evidence to prove that his eye condition was caused by his stay in segregation. *Id.* Ealy asked the district

court to appoint counsel so that he could "properly respond to defendants['] motion for summary judgment." *Id.*

The district court denied Ealy's final motion to recruit counsel. 09/29/2022 Text Order. Addressing Ealy's purported need to obtain expert testimony, the court explained that summary judgment briefing had already concluded and questioned the necessity of a medical expert. *Id.*

The district court then granted summary judgment in favor of defendants. Doc. 73 (SA01-17). The court first held that Ealy could not establish that he had a protected liberty interest at stake under the undisputed facts. *Id.* at 9-12 (SA09-12). It concluded that the five months that Ealy spent in segregation could not, by itself, implicate a liberty interest and that the conditions of Ealy's confinement were not severe enough to pose an "atypical and significant hardship." *Id.* Specifically, the court acknowledged that Ealy spent one month in investigatory segregation and noted that Ealy was in disciplinary segregation at Western for at most one month, and the only difference between those segregation cells and the general population cells was that the segregation cells were colder. *Id.* at 9-10 (SA09-10). Although one cell at Western was dirty, had bugs, and had a plumbing issue, the court stated that it was unclear how long Ealy was in that cell. *Id.* at 10 (SA10). Ealy, the court pointed out, served the remaining three months of segregation at Lawrence, and the only difference between those cells and general population cells was that the segregation cells were dirtier. *Id.*

The district court also was not persuaded by Ealy's argument that he suffered eye issues due to the dirty window at Lawrence.  *Id.* at 10-11 (SA10-11).  The court noted that Ealy did not mention his eye issues in his deposition and presented no "medical records or other evidence to substantiate the claim."  *Id.* at 10 (SA10).

Second, the court concluded that, even if Ealy had demonstrated that a liberty interest was at stake, he could not show that his due process rights were violated during the adjustment committee hearing.  *Id.* at 12-16 (SA12-16).  This was because the undisputed evidence established that Ealy received:  (1) notice, (2) the opportunity to be heard before an impartial decisionmaker, (3) the opportunity to call witnesses and present evidence, and (4) a written statement by the factfinder of the evidence relied on and the reasons for the discipline.  *Id.* at 13-14 (SA13-14).  Therefore, the court concluded, summary judgment was proper because Ealy did not demonstrate either a protected liberty interest or a lack of process.  *Id.* at 16 (SA16).

Ealy appealed.  Doc. 75.

## SUMMARY OF ARGUMENT

This court should affirm summary judgment for defendants on Ealy's due process claim. First, summary judgment was proper because the punishment that defendants recommended and approved did not deprive Ealy of a protected liberty interest. Five months of disciplinary segregation, on its own, does not deprive an inmate of liberty. Ealy argues that his placement in several segregation cells imposed an atypical and significant hardship because of the conditions in those cells. But he failed to provide any specific evidence regarding the severity of these conditions and, in any event, they could not form the basis of a due process claim when they were unknown to defendants and outside of their control.

Second, even if due process requirements were triggered, Ealy received all the process owed to him. Because Ealy received only a disciplinary transfer and did not lose any sentencing credits, he was entitled only to "informal, nonadversarial" process. The process he received easily cleared that standard.

Third, the district court did not abuse its discretion when it denied Ealy's five motions to recruit counsel. The court properly applied the *Pruitt* framework and reached reasonable conclusions based on the available facts when it ruled on each motion. Regardless, it is not reasonably likely that the absence of counsel affected the outcome of this case because the undisputed evidence showed that the discipline defendants recommended and approved did not cause an atypical and significant hardship, and the process that was provided satisfied the governing standard.

## ARGUMENT

### I. This court reviews *de novo* the district court's entry of summary judgment for defendants.

This court reviews *de novo* a district court's grant of summary judgment. *Daugherty v. Page*, 906 F.3d 606, 609 (7th Cir. 2012). On *de novo* review, the district court's judgment may be affirmed on any basis supported by the record and law. *Harney v. City of Chi.*, 702 F.3d 916, 921 (7th Cir. 2012).

"Summary judgment is properly entered against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Hakim v. Accenture U.S. Pension Plan*, 718 F.3d 675, 681 (7th Cir. 2013) (cleaned up). Although the nonmoving party is entitled to have the facts viewed in his favor, he "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation omitted). Inferences that rely on speculation are insufficient to defeat summary judgment. *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008).

### II. The district court correctly entered summary judgment for defendants on Ealy's due process claim.

The Due Process Clause of the Fourteenth Amendment prohibits the deprivation "of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Relevant here, to succeed on his due process claim, Ealy had to demonstrate (1) a protected liberty interest, and (2) deficient procedures attendant to

the deprivation of that liberty interest. *See Wilkinson v. Austin*, 545 U.S. 209, 221-22, 224 (2005). Summary judgment was proper because Ealy's due process claim failed as a matter of law on both fronts. The undisputed evidence showed that the discipline imposed by defendants did not implicate a protected liberty interest and, even if it did, no reasonable jury could find that defendants denied him due process.

## A. The punishment that defendants recommended and approved did not deprive Ealy of a protected liberty interest.

The district court correctly concluded that defendants' challenged conduct did not affect a protected liberty interest. Specifically, neither Frank and McKittrick's recommendation that Ealy be placed in disciplinary segregation for five months, nor Watson's approval of that disciplinary segregation, imposed prison conditions that caused Ealy an atypical and significant hardship compared to ordinary prison life.

An inmate's liberty interest "in avoiding segregation is limited." *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013). "Prisoners do not have a constitutional right to remain in the general population," *Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017), and a transfer that entails more adverse conditions of confinement within prison generally does not affect an inmate's already limited liberty, so long as it does not affect the length of his sentence, *Wilkinson*, 545 U.S. at 221 (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)); *Westefer v. Snyder*, 422 F.3d 570, 585-86 (7th Cir. 2005). Here, the discipline imposed did not affect the length of Ealy's sentence. *See* Doc. 58-4 at 2 (recommending transfer, segregation, loss of visitation, and loss of privileges).

As a result, Ealy's segregation term implicated a protected liberty interest only if defendants "imposed conditions resulting in an atypical and significant hardship compared to ordinary prison life." *Townsend v. Cooper*, 759 F.3d 678, 686 (7th Cir. 2014); *see Sandin v. Conner*, 515 U.S. 472, 484 (1995). This court has not fully resolved the question of how ordinary prison life is measured. *Compare Marion v. Radtke*, 641 F.3d 874, 876 (7th Cir. 2011) ("the right comparison is between the ordinary conditions of a high-security prison in the state, and the conditions under which a prisoner is actually held"), *with Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997) ("key comparison is between disciplinary segregation and nondisciplinary segregation"). But regardless of how ordinary prison life is measured, Ealy has failed to present evidence showing that the five-month disciplinary segregation term recommended and approved by defendants imposed an atypical and significant hardship.

Indeed, this court has held that even *six* months of disciplinary segregation is insufficient to trigger a liberty interest on its own. *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009); *Whitford v. Boglino*, 63 F.3d 527, 531-32 (7th Cir. 1995). Here, Ealy spent the first month of segregation in investigatory segregation, which does not trigger a liberty interest at all, no matter how long an inmate spends there. *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008) ("[I]nmates have no liberty interest in avoiding transfer to discretionary segregation — that is, segregation imposed for administrative, protective, or investigative purposes."). The remaining four months that Ealy actually spent in disciplinary segregation are

insufficient to trigger a liberty interest.  *See Lisle v. Welborn*, 933 F.3d 705, 721 (7th Cir. 2019) ("A sentence of four months in segregation for the discovery of contraband is not so atypical and significantly harsh that it creates a liberty interest.").

Nevertheless, Ealy argues that his one-month placement in investigatory segregation, his one-month placement in disciplinary segregation at Western in a cold cell, his placement in another cell at Western with bugs and bad plumbing for an unspecified amount of time, and his approximately three-month placement in a cell at Lawrence with a dirty, darkened window implicated a liberty interest.  AT Br. 11-16.  But even if a four-month stay in disciplinary segregation could implicate a liberty interest, *compare Kervin v. Barnes*, 787 F.3d 833, 836-37 (7th Cir. 2015) ("A considerably shorter period [than six months] may, depending on the conditions of confinement and on any additional punishments, establish a violation . . . .") *with Lisle*, 933 F.3d at 721 (four months in segregation did not implicate liberty interest), Ealy failed to provide "evidence that would allow a reasonable jury to find the conditions of his segregation imposed atypical and significant hardships," *Lisle*, 933 F.3d at 721.  The description Ealy provided of his segregation cells at Western in his deposition testimony was that the temperature of one cell was "real cold," that there were "spiderwebs and bugs," and that another had a plumbing problem that caused feces to back up into the toilet.  Doc. 58-2 at 20.  Ealy's description of his cells at Lawrence was similarly vague.  He merely stated that the Lawrence segregation cells were "filthier" than general population cells and that the "metal cage" outside his window blocked his "outside view" so that he could not "see [any]thing on the

outside." Doc. 58-2 at 22-23. But even if the temperature, plumbing, dirt, and blocked window made the conditions in Ealy's segregation cells worse than in a cell in general population, any hardship Ealy endured must have been "exceptionally harsh" to give rise to a liberty interest. *See Hardaway*, 734 F.3d at 743-44 (inmate would need to show "extreme" conditions to establish that his six-month discipline implicated a liberty interest). Here, Ealy did not provide detailed enough evidence regarding his cell conditions to enable a jury to find that the conditions of his confinement met this standard.

Indeed, the cases that Ealy cites on appeal to establish that cold temperatures could implicate a liberty interest, *see* AT Br. 12-14, illustrate the insufficiency of his evidence. In those cases, the plaintiffs presented evidence that provided context about the temperatures that they endured. For example, in *Gillis v. Litscher*, the plaintiff testified that he had to pace his cell for 14 hours a day just to stay warm, and that he became so cold that he had to tear open his mattress and sleep inside to warm himself. 468 F.3d 488, 490-91, 493 (7th Cir. 2006). *Gillis* is thus an example of a plaintiff who, by his testimony, was able to provide enough context and detail about the conditions he experienced to enable a jury to find that he had been deprived of a protected liberty interest. *See also Murphy v. Walker*, 51 F.3d 714, 720 (7th Cir. 1995) (plaintiff's evidence that his cell was unheated, and he was deprived of blankets, mattress, and clothes, sufficed to survive summary judgment).

Ealy's deposition testimony, however, is more like the plaintiff's statements in *Lisle*. There, the plaintiff provided a "vague description" of his cell, citing "corroded

feces," 933 F.3d at 721, while stating that he was denied a mattress and his cell became cold, *see id.* at 712. This court held that these nonspecific descriptions could not enable a "reasonable jury to find the conditions of his segregation imposed atypical and significant hardships." *Id.* at 721. Similarly, Ealy's statement that his cell was "real cold" gave no indication of the temperature in his cell or how uncomfortable it made him. Doc. 58-2 at 20. His description of the plumbing issue did not describe how often other inmates' waste backed up into his toilet, or whether his toilet had a lid such that he could separate himself from the waste. Doc. 58-2 at 20. *Cf. Johnson v. Prentice*, 29 F.4th 895, 904 (7th Cir. 2022), *cert. denied*, 144 S. Ct. 11 (2023) (upholding summary judgment where record lacked evidence of "frequency, severity, or duration" of unsanitary cell conditions). And although Ealy now states that his eyes were damaged from the blocked window at Western, AT Br. 5, he did not provide evidence that the blocked window caused his eye condition, *see* Doc. 73 at 10-11. The district court was not required to credit Ealy's unsupported arguments in his response to defendants' motion for summary judgment. *See Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 726 (7th Cir. 2004) ("[C]onclusory statements, not grounded in specific facts, are not sufficient to avoid summary judgment.").

Ealy's contention that defendants deprived him of a liberty interest fails for an additional reason: the cold, dirt, bugs, and toilet issue at Western and the blocked window at Lawrence were not part of the disciplinary action that defendants imposed. Only "*deliberate* decisions of government officials" can "deprive" a person of an interest protected by the Due Process Clause. *Daniels v. Williams*, 474 U.S.

327, 331 (1986) (emphasis in original); *see also Ruehman v. Sheahan*, 34 F.3d 525, 528 (7th Cir. 1994) (plaintiffs were not denied due process when sheriff negligently failed to purge warrants from a state computer system).  Indeed, the Due Process Clause is not implicated by official actions that cause "unintended loss of or injury to life, liberty, or property," because the clause was intended to protect against "arbitrary exercise of the powers of government."  *Daniels*, 474 U.S. at 328.

That is why, when deciding whether a constitutional deprivation occurred, this court "pinpoint[s] the exact moment" when the defendants supposedly deprived a plaintiff of liberty.  *Del Raine v. Williford*, 32 F.3d 1024, 1046 (7th Cir. 1994).  Here, the only challenged action taken by Frank and McKittrick occurred when they recommended five months' disciplinary segregation and the loss of certain other privileges.  Doc. 58-4 at 2.  Likewise, the only challenged action by Watson occurred when he signed off on the recommendation.  *Id.*

Although Ealy claims that he was placed in a cold cell (which sometimes had plumbing and pest issues) at Western, Doc. 58-2 at 20, and then transferred to Lawrence, where he was placed in a cell with a blocked window, *see* Doc. 58-1; Doc. 58-2 at 22-23, defendants did not impose any of those conditions as part of the disciplinary sanction, *see* Doc. 73 at 1 (SA01).  There was no evidence, moreover, that defendants knew about the conditions of any of the cells that Ealy occupied during his segregation.  Given that the specific conditions of Ealy's confinement were not part of the discipline or foreseeable to defendants, they could not have been part of

any deprivation that was imposed by them, *see Daniels*, 474 U.S. at 330, and thus cannot form the basis of a due process claim against defendants.

*Gillis* is illustrative of this point. In that case, the conditions the plaintiff encountered in his disciplinary confinement were designed by the prison, and the defendants thus knew of the conditions before the plaintiff was sent to segregation. *See Gillis*, 468 F.3d at 490 (warden's office received copy of and approved memorandum explaining that "[a]ll property [would] be removed" from inmate's cell for three days and in-cell property would "be limited to a segregation smock"). Therefore, the defendants in *Gillis* made a deliberate decision to impose the challenged conditions on the plaintiff.

And the Supreme Court's decision in *Wilkinson* is to the same effect. There, the Court held that an indefinite placement in segregation that deprived inmates of virtually all human contact and sensory stimuli, and disqualified those inmates for parole consideration, imposed an atypical and significant hardship. *Wilkinson*, 545 U.S. at 223-24. But those restrictive conditions were imposed by design. *See id.* at 213-14 (describing supermax facilities as "prisons with highly restrictive conditions, designed to segregate the most dangerous prisoners from the general prison population"). Thus, the due process claim in *Wilkinson* was based on the prison officials' "deliberate decision" to place inmates in those known, extreme conditions. *Cf. Daniels*, 474 U.S. at 333-34 (due process is typically applied to "*deliberate* decisions of government officials" (emphasis in original)). In this case, by contrast,

there was no evidence that defendants knew anything about the specific conditions that purportedly caused an atypical and significant hardship for Ealy.

For similar reasons, Ealy's argument is inconsistent with the section 1983 requirement that defendants may be held liable only for deprivations for which they were personally responsible. *See Hess v. Garcia*, 72 F.4th 753, 767 (7th Cir. 2023) (under section 1983, "officials are held accountable only for their own misconduct"). Section 1983 does not impose a system of vicarious liability on prison staff, *see Brown v. Randle*, 847 F.3d 861, 865 (7th Cir. 2017), and here there was no evidence that defendants were personally responsible for placing Ealy in any particular cell at Western or Lawrence. Indeed, if Ealy's cell conditions gave rise to any constitutional claim, it would be more appropriately presented as an Eighth Amendment claim against the officials responsible for Ealy's placement. Ealy, in fact, cites primarily Eighth Amendment cases in support of his claim. *See* AT Br. 12-13 (citing *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013); *Gillis*, 468 F.3d at 492-95; *Dixon v. Godinez*, 114 F.3d 640, 642-45 (7th Cir. 1997); *Murphy*, 51 F.3d at 720-21; *De Spain v. Uphoff*, 264 F.3d 965, 971-77 (10th Cir. 2001); *Wheeler v. Walker*, 303 F. App'x 365, 368 (7th Cir. 2008)). Here, however, Ealy presses a due process, not an Eighth Amendment, claim. But defendants may not be held liable under a due process theory that depends on conditions of confinement that were unknown to them and outside of their control.

In sum, Ealy did not satisfy his burden to offer evidence that the discipline recommended and approved by defendants deprived him of liberty within the Due

Process Clause's meaning. Therefore, summary judgment was properly entered for defendants.

## B. Alternatively, Ealy received all the process he was due.

Even if Ealy had established a constitutionally protected liberty interest in avoiding five months of disciplinary segregation, no action taken by defendants denied him due process. Relevant here, due process was satisfied because Ealy received an opportunity to present his story to the adjustment committee, which provided an explanation for its decision and identified the evidence upon which it was based.

Due process requirements "are 'flexible and cal[l] for such procedural protections as the particular situation demands.'" *Wilkinson*, 545 U.S. at 224 (alteration in original) (quoting *Morrisey v. Brewer*, 408 U.S. 471, 481 (1972)). As the Supreme Court has explained, "Prison disciplinary proceedings are not part of a criminal prosecution," and so "the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

How much process is due depends on the liberty interest at stake. When prison officials seek to revoke an inmate's sentencing credit or otherwise extend the duration of confinement, due process entitles the inmate to: (1) advance notice of the charges, (2) the opportunity to be heard before an impartial decisionmaker, (3) the opportunity to call witnesses and present documentary evidence, and (4) a written statement identifying and supported by some evidence in the record justifying the imposition of disciplinary action. *Id.* at 563-67; *accord Superintendent, Mass. Corr.*

*Inst., Wapole v. Hill*, 472 U.S. 445, 454 (1985). But, in cases like this one, involving a transfer to disciplinary segregation, an inmate is entitled only to "'informal, nonadversarial due process,' which 'leave[s] substantial discretion and flexibility in the hands of the prison administrators.'" *Adams v. Reagle*, 91 F.4th 880, 895 (7th Cir. 2024) (quoting *Westefer v. Neal*, 682 F.3d 679, 684-85 (7th Cir. 2012)); *see also Wilkinson*, 545 U.S. at 228-29. That is because transfer to segregation implicates a less "significant" liberty interest than disciplinary measures that "extend[ ] the length of an inmate's incarceration." *Westefer*, 682 F.3d at 684 (distinguishing *Wolff* because it involved the revocation of sentencing credits).

Thus, in *Wilkinson*, the Supreme Court held that Ohio's procedures before transferring inmates to a "super-max" prison were constitutionally sufficient when those procedures included only a written report explaining why the inmate was being transferred, a hearing before a committee, and 48-hour notice before the hearing. 545 U.S. at 216, 230. Inmates were not permitted to call witnesses, yet this process struck a "constitutionally permissible balance" before transfer to the most restrictive prison in the state. *Id.* Likewise, this court recently held in *Adams* that inmates are not entitled to call witnesses or view video evidence when facing disciplinary segregation, explaining that the plaintiff in that case received sufficient process because he was given the "opportunity to present his views." 91 F.4th at 896 (internal quotation omitted).

Ealy received more process than what was deemed sufficient in *Wilkinson*, *Westefer*, and *Adams*. Ealy received eight days' notice of his adjustment committee

hearing. *See* Doc. 58-4 at 1-4. He was informed of the charges against him before the hearing. Doc. 58 at 2. Ealy also appeared before the adjustment committee and argued in his own defense. Doc. 58 at 3; Doc. 58-4 at 1. And Ealy received a disciplinary report explaining the charge before the hearing, as well as a summary of the proceedings and the adjustment committee's decision. Doc. 58-4 at 1-6. Ealy, moreover, had the opportunity to call witnesses, though he did not avail himself of it. *See* Doc. 58-2 at 11 (stating that he did not submit the witness request slip at the bottom of his disciplinary ticket).

On appeal, however, Ealy argues that the process he received before the adjustment committee was deficient for two reasons. *See* AT Br. 20-25. Specifically, he maintains that he was entitled to view the visiting room surveillance footage, *id.* at 20-23, and that the adjustment committee's decision lacked adequate explanation, *id.* at 23-25. Both arguments lack merit.

First, Ealy argues that he was entitled to disclosure of the surveillance footage, which he claims contained exculpatory evidence, unless such disclosure would unduly threaten institutional concerns, citing *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003), as support. AT Br. 20-22. But Ealy overlooks the differences in due process requirements that apply when the prison discipline results in the extension of an inmate's sentence, which was the situation presented in *Piggie*, as opposed to when discipline results solely in a transfer to segregation. Again, a disciplinary penalty that extends the length of an inmate's incarceration implicates "a more significant liberty interest" and requires "a greater measure of procedural protection." *Westefer*,

682 F.3d at 684.  By contrast, inmates who face a transfer to disciplinary segregation are entitled only to "informal, nonadversarial due process," which guarantees merely "notice of the reasons for the inmate's placement" and the "'opportunity to present his views.'"  *Adams*, 91 F.4th at 895 (quoting *Westefer*, 682 F.3d at 684-85).

Both of those requirements were satisfied here.  As stated, Ealy was given the "opportunity to present his views" in his adjustment hearing.  *See* Doc. 58-4 at 1.  The record reflects that Ealy maintained that the phone call that officers at Western recorded was about a debit card, not drugs.  *Id.*; Doc. 58-2 at 13 (Ealy stating that he was given the opportunity to talk at his hearing).  Ealy also argued that he had not tested positive for drugs, and that if he had smuggled drugs into the prison, he would have used them, not given them away.  Doc. 58-4 at 1.  In addition, Ealy received a disciplinary report explaining the reason for the adjustment committee hearing, and in turn "the reason for his placement."  *See id.* at 1-4.  Thus, Ealy received more process than the plaintiff in *Adams*.  Ealy received notice, the opportunity to be heard, and even, unlike the plaintiff in *Adams*, the opportunity to call witnesses.  *See Adams*, 91 F.4th at 895.  Although Ealy did not have an opportunity to view the surveillance footage, the same was true of the plaintiff in *Adams*.  *See id.* at 888.  And in *Adams*, this court held that the plaintiff received all the process that was due.  *Id.* at 895-96.

Second, Ealy argues that he was denied due process because the adjustment committee's decision "lacked adequate explanation," in that the final summary report incorporated the disciplinary report.  AT Br. 23-25.  Citing *Redding v.*

*Fairman*, 717 F.2d 1105, 1115-16 (1983), Ealy argues that a due process violation occurs when an adjustment committee's decision adopts and copies the exact wording of the disciplinary report. AT Br. 23-24.

Ealy's reliance on *Redding* is misplaced. To begin, the holding in *Redding* was based in part on a since-repealed regulation regarding the content of adjustment committee decisions. *See Redding*, 717 F.2d at 1107. The current Department regulations do not prohibit using the language of a disciplinary report in an adjustment committee decision. 20 Ill. Admin. Code § 504.80(m) (2024) (the current regulation, which states that the record of an adjustment committee hearing need contain only a summary of oral and written evidence, the committee's reasons for finding that an offender committed an offense, and the disposition of the charges). And, in any event, *Redding*'s holding was based on *Wolff*, which involved the revocation of sentencing credits. *Wolff*, 418 U.S. at 565. But, again, inmates facing disciplinary transfer are entitled to only informal, nonadversarial due process, as opposed to the greater procedural safeguards described in *Wolff*. *See Wilkinson,* 545 U.S. at 216, 230; *Adams*, 91 F.4th at 895; *Westefer*, 682 F.3d at 684-85. In any case, the adjustment committee's decision sufficiently described the proceedings because there can be no misunderstanding as to why Ealy was confined to disciplinary segregation. In the "basis for decision," the committee credited the confidential sources, each of whom stated that Ealy was the offender responsible for bringing marijuana into Western, and one of whom stated that Ealy had a female friend smuggle the marijuana into the prison "inside her vagina." Doc. 58-4 at 1. The

adjustment committee then credited the surveillance footage showing Ealy's female visitor "reaching into the crotch area of her sweatpants, and placing an item on the table." *Id.* Ealy then swallowed the item before returning to his cell. *Id.* This video was further corroborated by a recorded phone call — which Ealy placed using another inmate's personal identification number the day before the video recording — in which he said to his female friend, "I'm going to see you tomorrow. Make sure you got that shit." *Id.* Thus, the adjustment committee's decision clearly related that it found Ealy guilty of bringing marijuana into the prison based on the plethora of evidence against him, consisting of witness statements, surveillance video footage, and a recorded phone call.

This case is therefore a far cry from *Redding*, where the disciplinary decision merely stated that "[a]ll evidence presented has convinced the committee [that] the resident is guilty." 717 F.2d at 1108 (internal quotation marks omitted). Similarly, *Hayes v. Walker*, 555 F.2d 625, 631 (7th Cir. 1977), and *Chavis v. Rowe*, 643 F.2d 1281, 1284 (7th Cir. 1981), on which Ealy also relies, *see* AT Br. 24, are easily distinguishable because those disciplinary decisions contained no details about the decision or the underlying reasoning. Unlike in those cases, where the decisions provided the inmate no explanation why the discipline was issued, here Ealy could understand that he was being disciplined because the adjustment committee found the confidential sources' statements, the video surveillance footage, and the recorded phone call to be evidence of his guilt. Ealy's due process rights were not violated

simply because the adjustment committee used the wording of the disciplinary report.

At bottom, Ealy did not present evidence that would allow a reasonable jury to find that he did not receive the process he was due under the governing legal standard. Therefore, the district court properly granted summary judgment for defendants.

## III. The district court did not abuse its discretion by denying Ealy's requests to recruit counsel and, regardless, Ealy was not prejudiced by the absence of counsel.

An indigent civil litigant has no constitutional or statutory right to court-appointed counsel, but he may ask the court to exercise its discretion under 28 U.S.C. § 1915(e)(1) to recruit counsel to represent him. *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014). The decision to recruit counsel is "difficult," as "[a]lmost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases." *Id.* (internal quotations omitted).

The decision of whether to recruit counsel "belongs to the district court," which "has considerable advantage over [the appellate court] of having seen how the plaintiff handled himself in the pretrial proceedings." *Pruitt*, 503 F.3d at 656 (cleaned up). This court, therefore, reviews that decision for an abuse of discretion, which does not occur unless the record "contains no evidence upon which the court could have rationally based its decision," the decision is based on erroneous conclusions of law or clearly erroneous factual findings, or the decision "clearly

appears arbitrary." *Id.* Given this significant deference, "the question on appellate review is not whether [this court] would have recruited a volunteer lawyer in the circumstances, but whether the district court applied the correct legal standard and reached a reasonable decision based on [the available] facts." *Watts v. Kidman*, 42 F.4th 755, 761 (7th Cir. 2022) (internal quotations omitted).

Moreover, even if this court determines that the district court abused its discretion, it will "reverse only if the error prejudiced the litigant." *Id.* (internal quotations omitted). Prejudice "requires more than just a likelihood that recruited counsel would have performed better than the *pro se* litigant, a benchmark that would nearly always be met." *Mejia v. Pfister*, 988 F.3d 415, 420 (7th Cir. 2021). Instead, the plaintiff must establish "a reasonable likelihood that the presence of counsel would have made a difference in the outcome of the litigation." *Id.* (cleaned up).

Here, the district court did not abuse its discretion in denying Ealy's motions to recruit counsel, and even if it did, this error did not prejudice Ealy.

### A. The district court applied the correct legal standard and reasonably denied Ealy's requests for recruited counsel based on the available facts.

When evaluating a motion to recruit counsel, the district court first asks "[whether] the indigent plaintiff made a reasonable attempt to obtain counsel or has been effectively precluded from doing so." *Pruitt*, 503 F.3d at 654. The district court found that Ealy made reasonable attempts to recruit counsel here, so the analysis turns on the next question, whether, "given the difficulty of the case," the "plaintiff

appear[s] competent to litigate it himself[.]" *See id.* This inquiry is individualized and "practical." *Id.* at 655. The court considers "whatever relevant evidence is available," while assessing factors such as the plaintiff's "literacy, communication skills, educational level, and litigation experience," and performance up to that point in the litigation. *Id.* at 655. Given the "particularized" nature of this inquiry, this court has "resisted laying down categorical rules regarding recruitment of counsel in particular types of cases*." Id.* at 656. The district court applied this legal standard when denying Ealy's five motions for recruitment of counsel.

To start, the district court's first denial was not an abuse of discretion. Although the court denied the motion, it also acknowledged that it would reconsider the motion following the resolution of Ealy's interlocutory appeal. Doc. 34 at 5-6. Moreover, Ealy filed an additional motion to recruit counsel following the dismissal of his appeal, obviating the need for the court to revisit his first motion.

The district court also did not abuse its discretion when it denied Ealy's second motion to recruit counsel. The court, applying *Pruitt*'s standards, observed that Ealy "seem[ed] competent to represent himself based on his filings." 12/2/2020 Text Order. It explained that Ealy had only "one claim before the court," and that claim had been "adequately stated in his complaint." *Id.* Noting that Ealy requested counsel in part because he would like to depose witnesses, the court pointed out that discovery would not begin until defendants filed an answer, and at that time, it would provide Ealy "with important information to assist [Ealy] during discovery." *Id.*

That decision was not an abuse of discretion because the court reasonably concluded that Ealy could litigate his remaining claim *pro se*. Although Ealy stated that he took medication that affected his ability to focus, Doc. 36 at 2, the court noted that his filings evidenced an ability to litigate the pleadings phase of the case, 12/2/2020 Text Order. This was a reasonable conclusion given Ealy's detailed complaint and his motion for a preliminary injunction, which showed an understanding of the Federal Rules of Civil Procedure and a responsiveness to court orders. The court also reasonably delayed answering the question of whether Ealy would need the assistance of counsel for discovery when defendants had not yet appeared or answered the complaint.

The district court also did not abuse its discretion in denying Ealy's third motion to recruit counsel. In that motion, filed about a week after discovery began, Ealy presented additional arguments. Doc. 42. He notified the court that he had limited access to the prison library due to the Covid-19 pandemic, stated that the case "will involve medical issues" that might "require expert testimony," and explained that he would not be able to depose confidential witnesses, investigate, or do depositions because of his incarceration. *Id.*

The court addressed these arguments and reasonably denied Ealy's motion. 1/27/2021 Text Order. First, the court addressed Ealy's claim that he needed a lawyer because the case would require expert testimony. *Id.* The court explained that Ealy had no medical claims, so medical expert testimony would be unnecessary. *Id.* Indeed, Ealy alleged a due process claim, not a claim about medical treatment,

and while Ealy mentioned an eye injury at one point in his complaint, he did not seek damages based on this alleged injury. *See* Doc. 1 at 14-16.

Second, the court considered Ealy's argument that he had limited access to legal resources because of the pandemic. 1/27/2021 Text Order. It reasonably decided that if Ealy was experiencing delays in accessing legal resources, he could file a motion to continue. *Id.* The court's approach accords with *Dorsey v. Varga*, 55 F.4th 1094, 1106 (7th Cir. 2022), where this court held that the onset of the Covid-19 pandemic, which caused an inmate to be unable to perform research in the prison library, was "not so significant" a change in circumstances so "as to require the district court to appoint counsel." And the court here allayed any concerns by explaining to Ealy that he could file motions to continue if the pandemic delayed his ability to research. 1/27/2021 Text Order.

In his fourth motion, which Ealy filed later during discovery, he complained that defendants had not provided him with his medical records or disclosed the identity of the confidential sources quoted in the investigation. Doc. 44. Ealy also explained that he was unsure of how to produce documents to defendants or how to respond to interrogatories. *Id.* Additionally, Ealy renewed his complaint that he was having difficulty accessing legal research materials due to Covid-19. *Id.*

The district court did not abuse its discretion when it denied this motion. First, it reasonably decided that, because Ealy did not have any medical claims before the court, defendants did not have to produce Ealy's medical records. 5/4/2021 Text Order. Also, the court had already explained to Ealy that if he was having issues

accessing legal resources, he could file a motion to continue. *Id.* The court also instructed Ealy to file a motion to compel if he wanted to obtain the names of confidential sources. *Id.* The fourth motion to recruit thus gave the court no additional reason to believe that Ealy was unable to litigate his case.

Finally, Ealy filed his fifth motion to recruit counsel after responding to defendants' motion for summary judgment and after summary judgment briefing had concluded. *See* Doc. 63; Doc. 64. In his motion, Ealy noted defendants' argument that he did "not have medical evidence or expert opinion to prove causation." Doc. 64. Ealy explained "that he asked for medical records in a previous motion which this court denied." *Id.* He also explained that "the allegation plaintiff is making about light damaging his eyes is essential for [proving] atypical and significant hardship and advancing his claim to trial." *Id.* He therefore requested counsel so that he could "properly respond to defendants['] motion for summary judgment." *Id.*

The district court reasonably denied this motion because by this point summary judgment briefing was completed. *See* Doc. 63; Doc. 64. To be sure, the court continued to question why Ealy required medical expert testimony, *see* 9/29/2022 Text Order (stating "Plaintiff's claim is limited to due process, not a medical condition"). But the court also explained that Ealy's motion was not timely. *Id.* Even if Ealy's fifth motion to recruit counsel was granted, counsel could do nothing to help him "respond to defendants['] motion for summary judgment." Doc. 64. And, in any event, any medical testimony that Ealy could have received would have had no bearing on the sufficiency of the process he received at his adjustment

committee hearing.  Therefore, the court did not abuse its discretion by denying the motion.

On appeal, Ealy first argues that the district court abused its discretion by not revisiting his first motion to recruit counsel.  AT Br. 27-28.  While the court never explicitly revisited that first motion, *see* Doc. 21 at 5-6, it reconsidered all of his arguments and considered Ealy's personal characteristics in response to Ealy's second motion to recruit counsel.  12/2/2020 Text Order.  Specifically, the court acknowledged Ealy's argument that his medication "would somehow prevent him from litigating his claims," but reasoned that Ealy seemed "competent to represent based on his filings."  *Id.*  Thus, the court properly considered the matters raised in Ealy's second motion to recruit counsel, which encompassed the matters he had raised in the first, as well everything that had occurred in the case after that first motion was filed.

Ealy also argues that the district court erred by not considering his ability to conduct discovery when it evaluated his second motion to recruit counsel.  AT Br. 38.  But defendants had not even filed an answer to Ealy's complaint at that time.  *See* Doc. 36; Doc. 39.  Given that discovery had not yet begun, the court did not know if the case would be resolved on a motion to dismiss, which would have negated the need for discovery.  As Ealy himself notes, competence "'considerations change as a case progresses to discovery or trial.'"  AT Br. 29 (quoting *Perez v. Fenoglio*, 792 F.3d 768, 785 (7th Cir. 2015)).  Because discovery had not begun, and might not have

occurred, the district court did not abuse its discretion by finding that Ealy did not yet need counsel to perform it.

Additionally, Ealy contends that the record was "chock-full" of confused filings and litigatory mistakes. AT Br. 32. It is true that Ealy made some mistakes, such as filing his case in the venue where he is currently incarcerated (Lawrence), rather than the venue where the adjustment committee hearing took place (Western), Doc. 6, as well as filing some failed motions before the district court. But Ealy also demonstrated a great capacity to litigate his case on his own behalf. He filed an interlocutory appeal, which showed knowledge of the Federal Rules of Civil Procedure. Doc. 13. He participated in discovery with defendants and requested documents and records. 7th Cir. Doc. 34 at 181 (hearing in which defense counsel stated that Ealy issued requests to produce documents). And his summary judgment response cited both the record and relevant case law from the Supreme Court and this circuit. Doc. 61 (citing *Scruggs v. Jordan*, 485 F.3d 934 (7th Cir. 2007), and *Wolff*, 418 U.S. 539, among other cases). Thus, any mistakes Ealy made were relatively minor.

Finally, Ealy argues that the district court abused its discretion when it failed to acknowledge Ealy's eye damage and purported medical claims. *See* AT Br. 30-31. Specifically, Ealy suggests that the court was obligated to credit his statement that his case involved medical claims, despite the fact that medical issues had not yet been discussed. But aside from a single clause in his complaint in which he did not specifically allege he was seeking damages for an eye injury, Doc. 1 at 14-15, Ealy did

not discuss the details of his medical claims until a hearing with the court on June 23, 2021, 7th Cir. Doc. 34 at 192. At that point, the court had already denied four of Ealy's five motions to recruit counsel. Those denials were not an abuse of discretion because the issue of Ealy's medical claims was not before the court. *See Balle v. Kennedy*, 73 F.4th 545, 559 (7th Cir. 2023) (district court must evaluate plaintiff's motion to recruit counsel "based on the record before it"). And by the time of Ealy' fifth motion, summary judgment briefing had already concluded. It would have been too late for any counsel to help Ealy present evidence to defeat defendants' summary judgment arguments. Therefore, the district court did not abuse its discretion when denying Ealy's five motions to recruit counsel.

Ealy also argues that the court should have determined that his eye issues rendered him unable to litigate his case. AT Br. 31. But Ealy's first two motions to recruit counsel specifically addressed conditions that allegedly hindered his ability to litigate the case. *See* Doc. 3 at 2; Doc. 36 at 2. In those motions, Ealy mentioned only his antidepressant medication, not his eye issues. *Id.* And just as critically, Ealy never argued that his vision problems hindered his ability to litigate his case until this appeal. Thus, Ealy has forfeited this argument. *Scheidler v. Indiana*, 914 F.3d 535, 540 (7th Cir. 2019) ("A party generally forfeits issues and arguments raised for the first time on appeal."). And the district court could not have abused its discretion by failing to address an issue not presented to it.

As explained above, there are many more indigent plaintiffs than lawyers willing and able to take on their cases *pro bono*. *Olson*, 750 F.3d at 711. District

courts must therefore undertake the unenviable task of "identifying, among a sea of people lacking counsel, those who need counsel the most." *Id.* The district court here addressed each of Ealy's arguments as to why he needed counsel and, throughout the litigation, continued to find that Ealy's filings showed he was not among the group of people who "need counsel the most." *Id.* The court therefore did not abuse its discretion in denying Ealy's five motions to recruit counsel.

### B. Ealy has not demonstrated that he was prejudiced by the district court's denial of his requests for counsel.

Even if the district court had abused its discretion in declining to recruit counsel, its decision was not reversible error because Ealy has not shown that there was a "reasonable likelihood that the presence of counsel would have made a difference in the outcome of the litigation." *Mejia*, 988 F.3d at 420. The court did not grant summary judgment in favor of defendants because of Ealy's "inability to present cogent arguments," *McCaa v. Hamilton*, 959 F.3d 842, 846 (7th Cir. 2020), but because, as discussed above, Ealy failed to provide specific evidence that would allow a jury to find that defendants imposed a punishment that caused an atypical and significant hardship, and even if he had, he received all process that was due at the adjustment committee hearing. *See supra* Section II.

Ealy argues on appeal that, with the help of counsel, he could have interviewed medical experts and presented evidence to show that his current eye problems were caused by his disciplinary segregation at Lawrence. AT Br. 31. Regardless of whether he was able to procure medical evidence and experts with the help of counsel, Ealy still would have lost at summary judgment because he received all the

process due at his adjustment committee hearing. *See supra* Section II.B. In addition, the condition of his window at Lawrence, which the evidence indicated was specific to his cell, cannot form the basis of a due process claim against defendants, who did not order his placement in that cell or have responsibility for the window's condition. *See supra* p. 20-23. Ealy, in fact, stated that the only characteristic common to all the segregation cells at Lawrence was that they were dirtier than other cells, not that they shared a common issue with the windows. *See* Doc. 58-2 at 22-23. Thus, any medical evidence that Ealy could have obtained with the assistance of counsel would not have defeated summary judgment because Ealy's due process claim still would have failed as a matter of law.

Additionally, Ealy argues that counsel could have more persuasively argued that he was entitled to view the surveillance footage, as well as confronted the confidential sources in a meaningful way at his adjustment committee hearing. AT Br. 34-35. But again, "an inmate who is facing transfer to disciplinary segregation is entitled only to 'informal, nonadversarial due process.'" *Adams*, 91 F.4th at 895 (citing *Westefer*, 682 F.3d at 684-85). The right to call witnesses or review surveillance footage is not included in this process. *See id.* at 889, 895-96 ("Adams was given the opportunity to present his arguments orally during the . . . hearings. This satisfies the Due Process Clause.").

In sum, Ealy was not prejudiced by the district court's denial of his motions to recruit counsel because even with counsel, Ealy could not establish that his due process rights were implicated, much less violated.

## CONCLUSION

For the foregoing reasons, this court should affirm the district court's judgment in favor of Defendants-Appellees Cameron Watson, David D. Frank, and Angela McKittrick.

Respectfully submitted,

**KWAME RAOUL**
Attorney General
State of Illinois

**JANE ELINOR NOTZ**
Solicitor General

115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-3000

Attorneys for Defendants-Appellees

/s/ Megan L. Brown
**MEGAN L. BROWN**
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(224) 204-9642 (office)
(312) 415-6318 (cell)
Megan.Brown@ilag.gov

March 11, 2024

**CERTIFICATE OF COMPLIANCE WITH PAGE LIMIT, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

I hereby certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 32 and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word for Microsoft 365, in 12-point Century Schoolbook BT font, and complies with Seventh Circuit Rule 32(c) in that the brief contains 10,421 words.

/s/ Megan L. Brown
MEGAN L. BROWN
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(224) 204-9642 (office)
(312) 415-6318 (cell)
Megan.Brown@ilag.gov

**CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on March 11, 2024, I electronically filed the foregoing Brief of Defendants-Appellees with the Clerk of Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

I certify that the other participants in this appeal, named below, are CM/ECF users and will be served by the CM/ECF system.

| | |
|---|---|
| Caleb P. Redmond<br>credmond@jonesday.com | David T. Raimer<br>dtraimer@jonesday.com |
| Anika M. Smith<br>anikasmith@jonesday.com | David Wreesman<br>dwreesman@jonesday.com |

/s/ Megan L. Brown
MEGAN L. BROWN
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(224) 204-9642 (office)
(312) 415-6318 (cell)
Megan.Brown@ilag.gov